**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| Constellation Mystic Power, LLC, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. <u>22-1215</u> |
| | ) | |
| Federal Energy Regulatory Commission, | ) | |
| | ) | |
| *Respondent*. | ) | |

**PETITION FOR REVIEW**

Constellation Mystic Power, LLC ("Mystic") hereby petitions this Court for review of the following Federal Energy Regulatory Commission orders (copies of which are attached).

1.  *Constellation Mystic Power, LLC*, Docket No. ER18-1639-000, 179 FERC ¶ 61,011 (Apr. 28, 2022) ("April 2022 Order").

2.  *Constellation Mystic Power, LLC*, Docket No. ER18-1639-017, 179 FERC ¶ 62,179 (June 27, 2022) ("June 2022 Order").

Mystic seeks review under section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), this Court's decision in *Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020), and Rule 15(a) of the Federal Rules of Appellate Procedure.

Mystic is the rate proponent of a cost-of-service agreement ("Mystic Agreement") at issue before the Commission. The Commission has addressed the

Mystic Agreement through a series of orders, which have then been appealed to this Court.

So far there have been two sets of appeals based on the Mystic Agreement. First, *Constellation Mystic Power LLC v. FERC (Mystic I)*, No. 20-1343 (consolidated with 20-1361, 20-1362, 20-1365, 20-1368, 21-1067, and 21-1070) has been briefed in this Court and was argued May 5, 2022. Dkt. 1945561 (before Chief Judge Srinivasan, Judge Henderson, and Judge Rao).

Second, *Constellation Mystic Power LLC v. FERC (Mystic II)*, is No. 21-1198 (consolidated with 21-1222, 21-1223, 21-1224, 22-1001, 22-1008, and 22-1026). That appeal has not yet been briefed and is currently being held in abeyance until September 8, 2022.

This appeal should be consolidated into *Mystic II* and briefed as part of it.

The issue presented here focuses on "true-up." The Mystic Agreement requires a series of informational filings. Those filings update prior projected costs to "true up" those projected costs to match actual costs once those are known. Interested parties may challenge the inputs to the informational filings.

Mystic's position is that its prior, fixed costs before 2018 have already been proven, cannot be "trued-up," and are not subject to challenge in the informational process. Mystic argued this in *Mystic I,* and the Commission responded that the

issue of the proper scope of true-up was not yet ripe.  Mystic Opening Br. 54-59;

FERC Br. 85.

On September 15, 2021, Mystic filed its first "informational filing" required

under the terms of the Mystic Agreement ("2021 Informational Filing").  Several

parties filed "Formal Challenges" to that filing.  In addressing those challenges, the

Commission properly refused to consider arguments based on Mystic's historical

costs.  But the Commission added that "whether historical capital expenditures

were properly accounted for will be subject to challenges" in Mystic's next

informational filing, to be filed on or before September 15, 2022.  April 2022

Order, 179 FERC ¶ 61,011 at P 25.

Mystic sought clarification that the Commission's statement in the April

2022 Order was dicta, or in the alternative sought rehearing.  The Commission

denied Mystic's request by operation of law on June 27, 2022.[1]

Mystic is aggrieved by the Commission's failure to rule that historical pre-

2018 rate base is outside the scope of the true-up, which may force it to re-litigate

historical costs that are fixed in the rate, in contravention of the statute.  Further,

the re-opening of historical costs opens Mystic to re-litigation of old issues that, if

---

[1] The Commission initially issued a notice of denial by operation of law on June
23, 2022, and rescinded that notice later that same day.  Even counting from the
rescinded June 23 notice, this petition is timely.

the challengers succeed, would reduce Mystic's compensation under the Mystic Agreement.

This petition is timely filed.  It is within 60 days of the Commission's June 27 denial of Mystic's rehearing request of the April 2022 Order.


Dated: August 22, 2022                          Respectfully submitted,

                                                */s/ Matthew A. Fitzgerald*

                                                Matthew A. Fitzgerald
                                                MCGUIREWOODS LLP
                                                Gateway Plaza
                                                800 East Canal Street
                                                Richmond, VA 23219
                                                T: (804) 775-4716
                                                F: (804) 698-2251
                                                mfitzgerald@mcguirewoods.com

                                                Noel H. Symons
                                                Katlyn A. Farrell
                                                MCGUIREWOODS LLP
                                                888 16th Street N.W.
                                                Suite 500
                                                Washington, D.C. 20006
                                                T: (202) 857-2929
                                                F: (202) 828-2992
                                                nsymons@mcguirewoods.com
                                                kfarrell@mcguirewoods.com

                                                *Counsel for Constellation Mystic
                                                Power, LLC*

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| Constellation Mystic Power, LLC, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| Federal Energy Regulatory Commission, | ) | |
| | ) | |
| *Respondent*. | ) | |

**CORPORATE DISCLOSURE STATEMENT OF CONSTELLATION**
**MYSTIC POWER, LLC**

Constellation Mystic Power, LLC ("Mystic") submits the following disclosure statement under Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1.

Mystic is a limited liability company. Mystic owns and operates the Mystic Generating Station, a natural-gas fired generator operating two units, Mystic 8 and 9, located in Massachusetts. Mystic sells the output of the Mystic Generating Station into markets under the jurisdiction of the Federal Energy Regulatory Commission.

Mystic is a direct, wholly-owned subsidiary of Constellation Holdings, LLC, which is a direct, wholly-owned subsidiary of Constellation Energy Generation, LLC. Constellation Energy Generation, LLC is a direct, wholly-owned subsidiary of Constellation Energy Corporation ("Constellation").

5

Constellation is a publicly traded corporation (stock ticker "CEG").

Constellation has no parent company, and no publicly held company has a 10

percent or greater ownership interest in Constellation.

/s/ Matthew A. Fitzgerald

*Counsel for Constellation Mystic
Power, LLC*

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| Constellation Mystic Power, LLC, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| Federal Energy Regulatory Commission, | ) | |
| | ) | |
| *Respondent*. | ) | |

**CERTIFICATE OF SERVICE**

Under Rules 15(c) and 25 of the Federal Rules of Appellate Procedure and Rules 15(a) and 25 of the Circuit rules, I certify that I have this 22nd day of August 2022, served by email or first-class mail, this Petition for Review on the Office of the Solicitor General of the Federal Energy Regulatory Commission and the Secretary of the Commission:

Ms. Kimberly D. Bose
Secretary
Federal Energy Regulatory
Commission
888 First St., NE
Washington, DC 20426

Mr. Robert H. Solomon
Solicitor
Federal Energy Regulatory
Commission
888 First St., NE
Washington, DC 20426

In addition, I have served all persons on the Commission's service list in the underlying proceeding, Docket. No. ER18-1639-000, *et al*:

**Avangrid Networks, Inc.**
nicholas.cicale@uinet.com
justin.atkins@avangrid.com

**Avangrid Renewables, LLC**
toan.nguyen@avangrid.com

**Braintree Electric Light Department**
jpc@duncanallen.com

**Calpine Corporation**
snovosel@calpine.com
bkruse@calpine.com

**Cavus Energy LLC**
dmccaffrey@cavusenergy.com

**Citizens Energy Corporation**
barbarajost@dwt.com
nicholasgiannasca@dwt.com

**Cogentrix Energy Power Management, LLC**
chrissherman@cogentrix.com

**Concord Municipal Light Plant**
jpc@duncanallen.com

**Connecticut Department of Energy and Environmental Protection**
Kirsten.Rigney@ct.gov
robert.snook@ct.gov

**Connecticut Municipal Electric Energy Cooperative**
rkipnis@cmeec.org

**Connecticut Public Utilities Regulatory Authority**
Scott.Strauss@spiegelmcd.com
jeffrey.schwarz@spiegelmcd.com
Clare.Kindall@ct.gov
robert.luysterborghs@ct.gov
seth.hollander@ct.gov

latif.nurani@spiegelmcd.com

**Consolidated Edison Energy, Inc.**
dannelsj@conedceb.com

**Constellation Mystic Power, LLC**
nsymons@mcguirewoods.com
kfarrell@mcguirewoods.com
ccoffman@mcguirewoods.com
carrie.allen@constellation.com
john.white@constellation.com

**Dighton Power, LLC**
meghan.gruebner@libertyutilities.com
jdelgado@starwood.com

**Direct Energy**
mphilips@lspower.com

**Direct Energy Business Marketing, LLC**
mphilips@lspower.com

**Direct Energy Business, LLC**
mphilips@lspower.com

**Distrigas of Massachusetts LLC**
david.wochner@klgates.com
wkeyser@steptoe.com
mike.oneill@klgates.com

**Dominion Energy Services, Inc.**
wesley.walker@dominionenergy.com

**Eastern New England Consumer-Owned Systems**
jrs@duncanallen.com

**Electric Power Supply Association**
NancyB@epsa.org

**ENGIE Gas & LNG LLC**
david.wochner@klgates.com
wkeyser@steptoe.com
mike.oneill@klgates.com

**Environmental Defense Fund**
nkaras@edf.org

**Eversource Energy Service Company**
mary.grover@eversource.com

**Federal Energy Regulatory Commission**
Michael.Splete@ferc.gov
james.pepper@ferc.gov
matthew.phillips@ferc.gov

**FirstLight Power Resources, Inc.**
marc.silver@firstlightpower.com
Serena.Rwejuna@whitecase.com
stephen.hug@bracewell.com

**Gaz Metro LNG, L.P.**
tgriset@preti.com
hugo.sigouin-plasse@energir.com

**Georgetown Municipal Light Department**
jpc@duncanallen.com

**Hingham Municipal Lighting Plant**
jpc@duncanallen.com

**Industrial Energy Consumer Group**
tgriset@preti.com

**ISO New England Inc.**
chamlen@iso-ne.com
jhorgan@iso-ne.com
mgulluni@iso-ne.com
LMorrison@iso-ne.com
lmailesmith@iso-ne.com

thompson@wrightlaw.com
swers@wrightlaw.com
collins@wrightlaw.com

**Littleton Electric Light & Water Department**
jpc@duncanallen.com

**LS Power Associates, L.P.**
thoatson@lspower.com
nlevy@mwe.com

**Maine Public Utilities Commission**
eric.j.bryant@maine.gov

**Massachusetts Attorney General Maura Healey**
amb@duncanallen.com

**Massachusetts Department of Public Utilities**
christina.belew@ mass.gov
greggory.wade@mass.gov
krista.hawley@mass.gov

**Massachusetts Municipal Wholesale Electric Company**
Scott.Strauss@spiegelmcd.com
jeffrey.schwarz@spiegelmcd.com
eService@spiegelmcd.com

**Middleborough Gas & Electric Department**
jpc@duncanallen.com

**Middleton Electric Light Department**
jpc@duncanallen.com

**Milford Power, LLC**
meghan.gruebner@libertyutilities.com
jdelgado@starwood.com

**Monitoring Analytics, LLC**
jeffrey.mayes@monitoringanalytics.com
Joseph.Bowring@monitoringanalytics.com

Suzette.Krausen@monitoringanalytics.com

**National Grid USA**
daniel.galaburda@nationalgrid.com
michaelkunselman@dwt.com
seanatkins@dwt.com

**New England Local Distribution Companies**
aclair@thompsoncoburn.com
edna.karanian@eversource.com
nallen@thompsoncoburn.com
acontrino@wgeld.org
hartigan@unitil.com
benjamin.collins@eversource.com
jgregg@mccarter.com
justin.atkins@avangrid.com
kchrist@nisource.com
slanglois@ctgcorp.com

**New England Power Generators Association Inc.**
banderson@nepga.org

**New England Power Pool Participants Committee**
dtdoot@daypitney.com
slombardi@daypitney.com
sbrowning@daypitney.com
jfagan@daypitney.com

**New England States Committee on Electricity**
jasonmarshall@nescoe.com
jeffbentz@nescoe.com

**New Hampshire Electric Cooperative, Inc.**
Scott.Strauss@spiegelmcd.com
jeffrey.schwarz@spiegelmcd.com
eService@spiegelmcd.com

**New Hampshire Office of Consumer Advocate**
donald.kreis@oca.nh.gov

**New Hampshire Public Utilities Commission**
David.K.Wiesner@energy.nh.gov
george.mccluskey@puc.nh.gov

**NextEra Energy Resources, LLC**
joel.newton@nee.com
cholahan@foleyhoag.com

**Norwood Light and Broadband Department**
jpc@duncanallen.com

**NRG Power Marketing LLC and GenOn Energy Management, LLC**
abe.silverman@nrg.com
cortney.slager@nrg.com
jennifer.hsia@nrg.com

**Pascoag Utility District**
jpc@duncanallen.com

**Phyllis G. Kimmel Law Office PLLC**
pkimmel@pgklawoffice.com

**PSEG Power LLC**
adrian.newall@pseg.com
cara.lewis@pseg.com

**PSEG Energy Resources & Trade LLC**
adrian.newall@pseg.com
cara.lewis@pseg.com
Raymond.Depillo@pseg.com

**PSEG Power Connecticut LLC**
adrian.newall@pseg.com
cara.lewis@pseg.com
jgordon@cpv.com

**Public Citizen, Inc.**
tslocum@citizen.org

**Reading Municipal Light Department**
jpc@duncanallen.com

**Repsol Energy North America Corporation**
robert.neustaedter@repsol.com
kevin.voelkel@bracewell.com
michael.brooks@bracewell.com

**State of Rhode Island**
nicholas.ucci@energy.ri.gov

**Taunton Municipal Lighting Plant**
jpc@duncanallen.com

**Vermont Department of Public Service**
ed.mcnamara@vermont.gov

**Vermont Public Utility Commission**
mary-jo.krolewski@vermont.gov

**Verso Corporation**
rfallon@efenergylaw.com
Steve.brooks@versoco.com

**Vitol Inc.**
catherine.krupka@sutherland.com
rfv@vitol.com
jxw@vitol.com

**Wellesley Municipal Light Plant**
jpc@duncanallen.com

**Westfield Gas & Electric Light Department**
jpc@duncanallen.com

*/s/ Matthew A. Fitzgerald*

*Counsel for Constellation Mystic Power, LLC*

# Exhibit 1

179 FERC ¶ 61,011
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
James P. Danly, Allison Clements,
Mark C. Christie, and Willie L. Phillips.

| | |
|---|---|
| Constellation Mystic Power, LLC | Docket No.  ER18-1639-000 |

ORDER GRANTING IN PART, AND DENYING IN PART, FORMAL
CHALLENGES, SUBJECT TO REFUND, AND ESTABLISHING HEARING AND
SETTLEMENT JUDGE PROCEDURES

(Issued April 28, 2022)

1.      On September 15, 2021, Constellation Mystic Power, LLC (Mystic) filed,
pursuant to the Commission's orders in Docket No. ER18-1639-000 and sections I.B.1.i
and II.6 of Schedule 3A of the executed cost-of-service agreement (Mystic Agreement)
among Mystic, Constellation Energy Generation, LLC (Constellation),[1] and ISO New
England, Inc. (ISO-NE), an informational filing supporting capital expenditures and
related costs (2022 CapEx Projects) that Mystic projects it will collect as an expense
between June 1, 2022 and December 31, 2022 (First Informational Filing).  On October
15, 2021, the New England States Committee on Electricity (NESCOE) and the Eastern
New England Customer-Owned Systems (ENECOS) filed formal challenges to that First
Informational Filing.  As discussed below, we grant in part, and deny in part, NESCOE's
and ENECOS' formal challenges to the First Informational Filing, and otherwise set the
issue of whether the 2022 CapEx Projects are consistent with the requirements of the
Mystic Agreement for hearing and settlement judge procedures.

I.      **Background**

2.      On May 16, 2018, Mystic filed the Mystic Agreement to compensate Mystic on a
cost-of-service basis for the continued operation of Mystic Generation Station Units 8
and 9 (Mystic 8 and 9) from June 1, 2022, through May 31, 2024.[2]  Mystic proposed a

---

[1] Constellation was formerly known as Exelon Generation Company, LLC.

[2] ISO-NE will allocate the costs for the cost-of-service agreement that exceed the
Forward Capacity Auction price (for which revenue will be netted against the resource's
total cost-of-service revenue requirement) on a regional basis to Real-Time Load
Obligation, which will be collected over a 12-month period.  *ISO N. Eng. Inc*., 165 FERC

Document Accession #: 20220428-3077     Filed Date: 04/28/2022

formula rate that, consistent with Commission formula rate precedent, would allow Mystic to make cost adjustments computed in accordance with the formula without making a new Federal Power Act (FPA) section 205 filing for each adjustment.  Mystic based its formula rate protocols on protocols previously accepted by the Commission for Midcontinent Independent System Operator, Inc. transmission owners.[3]

3.      Schedule 3A of the Mystic Agreement describes the formula rate true-up process, which includes a requirement that Mystic submit annual informational filings to the Commission by September 15 of each year, beginning in 2021 (the year prior to the beginning of the term of the Mystic Agreement on June 1, 2022).[4]  Generally, each informational filing must include, if applicable, the information that is reasonably necessary to determine:

> (1) that input data under the formula rate template are properly recorded in any underlying workpapers;

> (2) that Mystic has properly applied the formula rate template and these procedures;

> (3) the accuracy of data and the consistency with the formula rate template of the Annual Fixed Revenue Requirement;

> (4) the extent of accounting changes that affect inputs;

> (5) whether a capital expenditure collected as an expense during the Term is necessary in order to meet the obligations of the [Mystic] Agreement; and

> (6) whether a capital expenditure collected as an expense during the Term is reasonably determined to be the least-cost commercially reasonable option consistent with Good Utility Practice to meet the obligations of the [Mystic] Agreement.[5]

4.      Additionally, each informational filing has its own purpose and requirements that differ depending on the year.  The First Informational Filing requires Mystic to:

---

¶ 61,202, at P 40 & n.74 (2018).

[3] *Midcontinent Indep. Sys. Operator, Inc.,* 143 FERC ¶ 61,149, at P 83 (2013).

[4] Mystic Agreement, Schedule 3A.II, § 6.A

[5] Mystic Agreement, Schedule 3A.

Document Accession #: 20220428-3077     Filed Date: 04/28/2022

file on or before April 1, 2021 . . . appropriate support for the capital expenditures
and costs that will be collected as an expense during the Term in calendar year
2022 (June 1, 2022 to December 31, 2022) as detailed below.  The Annual Fixed
Revenue Requirement, the Maximum Monthly Fixed Cost Payment, and the Fixed
O & M [Operations and Maintenance]/Return on Investment component of the
Monthly Fuel Cost Charge for the relevant period of the Term in Schedule 3 will
be updated in accordance with the Methodology[6] and shall exclude true-up of
investment and expense items disallowed by the Commission, if any.[7]

5.      Schedule 3A of the Mystic Agreement provides for both an informal and formal
process for parties to submit challenges to Mystic's annual informational filings.  The
informational exchange and informal challenge procedures occur prior to Mystic
submitting its annual informational filing to the Commission on September 15 of each
year.  Pursuant to the terms of the Agreement, on April 1 of each year, Mystic is required
to submit each of its annual informational filings to ISO-NE prior to filing at the
Commission.  Interested parties may make reasonable information and document requests
to Mystic through the informal challenge process.  The informal challenges and Mystic's
responses are then detailed in the annual informational filing ultimately submitted to the
Commission.

6.      The formal challenge process occurs after Mystic submits its September 15
informational filing to the Commission.  On October 15 of each year, parties must submit
formal challenges.  Relevant here, Schedule 3A states that:

> In any proceeding initiated by FERC concerning the [Informational] Filing
> or in response to a Formal Challenge, [Mystic] shall bear the burden,
> consistent with section 205 of the [FPA], of proving that (i) it has correctly
> applied the terms of the Methodology consistent with these protocols, and
> (ii) in the case of capital expenditures that are expensed during the Term of
> the [Mystic] Agreement, that the capital expenditure is necessary in order to
> meet the obligations of the [Mystic] Agreement, and that the expenditure is
> reasonably determined to be the least-cost commercially reasonable option
> consistent with Good Utility Practice to meet the obligations of the
> Agreement.  Nothing herein is intended to alter the burdens applied by
> FERC with respect to prudence challenges.[8]

---

[6] The "Methodology" is "the formula rate template [used] . . . to establish the rate
for each year of the Term" of the Mystic Agreement.  Transmittal at 2.

[7] Mystic Agreement, Schedule 3A, § I.B.1.i

[8] Mystic Agreement, Schedule 3A, § II.4.G.

Docket No. ER18-1639-000                                                    - 4 -

7.     For the First Informational Filing, Schedule 3A, section I.B.1.i of the Mystic Agreement, titled "Support for Capital Expenditures necessary to meet the reliability need between June 1, 2022 and December 31, 2022[,]" states that Mystic shall provide:

> [A]ppropriate support for the capital expenditures and costs that will be collected as an expense during the Term in calendar year 2022 (June 1, 2022 to December 31, 2022) as detailed below.  The Annual Fixed Revenue Requirement, the Maximum Monthly Fixed Cost Payment, and the Fixed O & M/Return on Investment component of the Monthly Fuel Cost Charge for the relevant period of the Term in Schedule 3 will be updated in accordance with the [formula rate template] and shall exclude true-up of investment and expense items disallowed by the Commission, if any.[9]

## II.    Filing

8.     Mystic characterizes this First Informational Filing as a "before-the-fact informational posting to substantiate the nature of the proposed work to be done and update projected costs" for projects needed to meet the reliability needs between June 1, 2022, and December 1, 2022.[10]  Mystic states that these costs will become an input to the formula rate and will be trued up to actual costs in subsequent informational filings. Therefore, Mystic argues, the scope of this First Informational Filing "is limited to providing information to demonstrate that the proposed 2022 CapEx Projects are appropriate capital expenditures under the Mystic Agreement."[11]  Mystic states that it has complied with all deadlines and requirements of the formula rate protocols, and it has made good faith efforts to respond to all reasonable information and document requests as well as informal challenges within 15 business days.[12]

## III.    Notice of Filing and Responsive Pleadings

### A.    Notice

9.     On October 15, 2021, NESCOE and ENECOS filed formal challenges.  Notice of NESCOE's and ENECOS' formal challenges was published in the *Federal Register*, 86

---

[9] Mystic Agreement, Schedule 3A, § I.B.1.i.

[10] Transmittal at 3 (quoting Prepared Supplemental Direct Testimony of Alan C. Heintz, Ex. No. MYS-0020 at 4-5 (Jul. 30, 2018)).

[11] *Id.* at 3.

[12] *Id.* at 4-5.

Fed. Reg. 60,622 (Nov. 3, 2021), with interventions and protests due on or before
November 17, 2021.

10.    On November 17, 2021, Mystic filed a response to NESCOE's and ENECOS'
formal challenges.  On December 2, 2021, ENECOS filed a response to Mystic's
November 17, 2021, response, and on December 6, 2021, NESCOE filed a response to
Mystic's November 17, 2021 response.

### B.    Formal Challenges

11.    NESCOE's and ENECOS' Formal Challenges raise a number of issues that
broadly fall into three categories:  (1) the scope of the First Informational Filing (i.e.,
which components of Mystic's rates can be challenged); (2) whether certain expenditures
were properly booked; and (3) whether certain capital expenditures were adequately
supported.

### 1.    Scope of First Informational Filing

12.    NESCOE argues that Schedule 3A requires Mystic to update all inputs to its
formula rate template and recalculate the Annual Fixed Revenue Requirement (AFRR)
rather than only updating its capital expenditures and requests that the Commission
require Mystic to do so.  NESCOE claims that while Mystic provided information on its
capital expenditures for the period June 1, 2022 to December 31, 2022, it failed to update
its formula rate template (and corresponding AFRR) with costs other than capital
expenditures, i.e., Operations and Maintenance (O&M) expenses.  Consequently,
NESCOE claims that, though Mystic has provided assurances that it removed a tank
recoating project and a secondary feed agreement from rate base and reclassified them as
O&M expenses, neither NESCOE nor the Commission can verify that Mystic did so.[13]

13.    In its response, Mystic maintains that Schedule 3A limits the scope of the First
Informational Filing to support for Mystic's projected capital expenditures.[14]  Mystic
states that it will support its projected O&M and other costs in its subsequent
informational filing that will be filed with ISO-NE on April 1, 2022 (Second
Informational Filing).  Mystic disputes NESCOE's interpretation of the last sentence of
Schedule 3A, section I.B.1.i., which states that the AFRR "will be updated in accordance
with the Methodology and shall exclude true-up of investment and expense items
disallowed by the Commission, if any."  Mystic argues that this sentence requires that if a
capital expenditure identified in the First Informational Filing is disallowed by the
Commission, that disallowance will be reflected in the AFRR only when it is

---

[13] NESCOE Formal Challenge at 8-15 (citing Mystic Agreement, Schedule 3A).

[14] Mystic Response at 10-18, 44-50.

subsequently updated as part of the true-up process. According to Mystic, NESCOE's interpretation that the AFRR should have been updated in the First Informational Filing to "exclude true-up of investment and expense items disallowed by the Commission"[15] would put the proverbial "cart before the horse," since such a disallowance could only follow the First Informational Filing. Mystic further argues that its own interpretation is consistent with ordinary, forward-looking formula rate protocols.[16] Mystic further contends that NESCOE will have the opportunity to verify that these costs are properly accounted for in Mystic's updated costs that are due to ISO-NE on April 1, 2022, at the start of the process for Mystic's Second Informational Filing.[17]

14.    NESCOE asserts in its response to Mystic's response that the protocols contained in Schedule 3A expressly require that Mystic include with its First Informational Filing an update to the Mystic 8 and 9 AFRR and the Everett AFRR for the June 2022-December 2022 period and that Mystic support its capital expenditures prior to their incurrence. NESCOE states that its concern stems from the lack of an express provision in the protocols giving parties a right to review and challenge the 2022 CapEx Projects or other costs associated with the June 2022 – December 2022 period at a future time.[18]

## 2.    **Improper Booking of Items**

15.    ENECOS argues that Mystic has improperly booked several items as capital expenditures that should be recorded as O&M and expensed prior to the term of the Mystic Agreement. Specifically, ENECOS claims that historical turbine inspections, Everett "Rate Base Capex," rotor inspections, and the Campus Segregation Project should have been booked as O&M and/or expensed prior to the term of the Mystic Agreement.[19]

16.    Mystic responds that its capital expenditures were properly booked and that ENECOS's challenges to Mystic's historical (i.e., pre-2018) capital expenditures were fully litigated in 2018 and are outside the scope of this proceeding. Mystic reiterates its assertion that its updated formula rate template and AFRR were provided for

---

[15] Mystic Agreement, Schedule 3A, § I.B.1.i.

[16] Mystic Response at 18-20 (citing Wolfram Aff. at ¶ 26).

[17] *Id*. at 44-50. Mystic is required to file its Second Informational Filing with the Commission by September 15, 2022.

[18] NESCOE Response to Mystic Response at 2-4.

[19] ENECOS Formal Challenge at 11-19.

informational purposes and that Mystic is not seeking to recover anything other than 2022 capital expenditures through this particular filing.[20]

17.     In its response to Mystic's response, ENECOS disputes Mystic's assertion that certain of ENECOS' formal challenges are either beyond the scope of this proceeding or have already been fully litigated and decided.[21]  ENECOS states that the Commission has previously found that the true-up mechanism applies to all items, including capital expenditures, whether incurred prior to the term of the Mystic Agreement period or capitalized during the term of the Mystic Agreement and expensed,[22] and res judicata and collateral estoppel would only apply to issues that have been fully litigated and decided on the merits.  ENECOS further states that the Commission has disagreed with Mystic's assertion that rate base items as of the end of the test period have been fully litigated and the results found just and reasonable.[23]  ENECOS argues that Mystic has failed to substantiate the justness and reasonableness of its proposed inputs to its formula rate.[24] ENECOS submitted declarations supporting its position.

### 3.     Failure to Support Capital Expenditures

18.     NESCOE and ENECOS contest whether Mystic adequately supported certain capital expenditures.  According to NESCOE and ENECOS, Schedule 3A requires Mystic to demonstrate that its projected capital expenditures are the least-cost commercially reasonable option, what alternatives were considered, and whether these expenditures are required to meet the obligations of the Mystic Agreement.  Each contends that Mystic has not supported all of its projected capital expenditures as being necessary to meet the reliability need during the term of the Mystic Agreement or being the least-cost commercially reasonable option consistent with Good Utility Practice. NESCOE provides a list of over 20 line-items for both Mystic and Everett ranging from $100,000 to $1.2 million that NESCOE claims are unsupported, including expenditures related to forward bollard and mooring hooks at the Everett LNG terminal.  ENECOS similarly argues that rotor inspections, an auxiliary boiler reconfiguration project (i.e., Mystic's Campus Segregation Project), fixed pipeline transportation costs, and Everett

---

[20] Mystic Response at 20-26.

[21] ENECOS Response to Mystic Response at 2.

[22] *Id*. at 3 (citing *Constellation Mystic Power, LLC*, 172 FERC ¶ 61,045, at P 48 (2020)).

[23] *Id*. at 4 (citing *Constellation Mystic Power, LLC*, 172 FERC ¶ 61,044, at P 86 (2020); *Constellation Mystic Power, LLC*, 165 FERC ¶ 61,267, at P 64 (2018)).

[24] *Id*. at 9.

corporate administrative and general overhead costs are either not recoverable or are otherwise not adequately supported by Mystic and therefore should be disallowed.[25]

19.     With regard to its support for specific capital expenditure projects, Mystic states that the projects NESCOE and ENECOS list are needed to maintain reliability but are still in the long-range planning phase of Exelon's capital process and have not yet entered the approval process.[26] Mystic submits two affidavits outlining how each project meets the relevant standards from Schedule 3A, section II.2.A of the Mystic Agreement (i.e., whether the capital expenditure is necessary to meet the reliability need and is the least-cost commercially reasonable option). In one affidavit, Mystic claims that for many of the projects identified by NESCOE, it does not yet have the documentation necessary to demonstrate that the projects meet these standards.[27] Mystic further explains that its two-step capital approval process incorporates the standard in the Mystic Agreement protocols when evaluating potential capital projects. Nevertheless, Mystic argues that it has met its burden and demonstrated that the 2022 capital expenditures in question are necessary to meet the obligations of the Mystic Agreement and are the least-cost commercially reasonable option consistent with Good Utility Practice. Mystic notes that if any of these projects are not pursued, those costs will not be charged to ratepayers. Mystic also notes that interested parties will have future opportunities to review costs related to these projects in subsequent true-up filings.[28]

---

[25] NESCOE Formal Challenge at 15-22, ENECOS Formal Challenge at 5-17.

[26] Mystic Response at 26.

[27] Mystic First Informational Filing, attach. A-1 (Aff. of Michael Brown & Abegail Piollo-Alam) ¶ 10 ("Many of the CapEx projects identified in this 2021 Informational Posting for the June 2022 through December 2022 time period are still in the long-range planning phase, and therefore do not yet have formal internal approvals, formalized alternatives, or more final cost estimates. Once formal internal approvals are secured, documentation establishing the projects as the least-cost, commercially reasonable option, consistent with Good Utility Practice, will be available for parties to review. It was determined to be infeasible and inconsistent with [Constellation's] best practice, which we believe has driven optimal results for our fleet, to attempt to establish a separate approval process just for the Mystic Agreement or to pursue project approval and project commitments on an advanced timeline. Further, because the Mystic Agreement requires an updated projection of costs in April of 2022 and a true-up to actual costs in 2023, interested parties will have ample opportunity to review the actual, final costs when they are known.").

[28] Mystic Response at 27-31.

Document Accession #: 20220428-3077          Filed Date: 04/28/2022

20.     NESCOE responds that the protocols do not require Mystic to substantiate the 2022 CapEx Projects with the Second Informational Filing, but rather, that in the Second Informational Filing, Mystic is required to substantiate the capital expenditures to be incurred in 2023, not 2022.  NESCOE asserts that there must be some avenue to challenge whether the 2022 CapEx Projects meet the standards set forth in Schedule 3A, section II.2.A (namely, whether the 2022 CapEx Projects are: (1) necessary to meet Mystic's obligations under the Mystic Agreement; and (2) the least-cost commercially reasonable option consistent with Good Utility Practice).  NESCOE adds that Mystic's view as to what it must to do to support its 2022 CapEx Projects as required by seems to be a moving target.[29]

## IV.     Discussion

### A.     Procedural Matters

21.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2021), generally prohibits an answer to a protest or an answer unless otherwise ordered by the decisional authority.  We accept NESCOE's and ENECOS' responses to Mystic's response because they have provided information that assisted us in our decision-making process.

### B.     Substantive Matters

22.     As discussed below, the Commission hereby summarily denies NESCOE's challenge regarding the update to the AFRR and also ENECOS' challenge with regard to the improper booking of items.  With regard to NESCOE's and ENECOS' allegations that Mystic has failed to support all of its projected capital expenditures, however, we find that the First Informational Filing raises issues of material fact that cannot be resolved based on the record before us and that are more appropriately addressed under hearing and settlement judge procedures, as ordered below.

#### 1.     Scope of First Informational Filing

23.     We deny NESCOE's challenge with regard to updating the AFRR.  As detailed in the Mystic Agreement, the First Informational Filing contains only a single heading, which relates to capital expenditures.[30]  In contrast, Schedule 3A contains a separate heading for the second through fourth informational filings specifically for updates to the AFRR.  For the Second Informational Filing, for example, the language under this AFRR

---

[29] NESCOE Response to Mystic Response at 5.

[30] Mystic Agreement, Schedule 3A, § I.B.1.i (Support for Capital Expenditures necessary to meet the reliability need between June 1, 2022 and December 31, 2022).

heading provides that on or before April 1, 2022, Mystic shall file to "update the [AFRR] . . . with updated projections for all items subject to true-up . . . that [Mystic] is estimated and projected to incur to maintain and operate . . . during the Term based upon information contained in [Mystic's] books and records."[31]  We find that, when read in context, the provision of Schedule 3A that discusses updates to the AFRR should be interpreted as requiring updates after the Commission has acted on the First Informational Filing regarding Mystic's proposed 2022 CapEx Projects.  Therefore, we conclude that the First Informational Filing only obligates Mystic to support its proposed capital expenditures and that, although Mystic is required to update its AFRR prior to June 1, 2022, that update occurs in the Second Informational Filing.[32]  We note that this finding does not in any way limit the ability of parties to challenge the AFRR and other underlying projected costs in Mystic's Second Informational Filing, where the informal challenge process begins on April 1, 2022 and the formal challenge process begins on September 15, 2022.[33]  We also reiterate that all items except return on equity and depreciation are subject to the true-up process described in Schedule 3A, not just projected capital expenditures.[34]

### 2.    Improper Booking of Items

24.    We similarly deny ENECOS' challenge to the First Informational Filing on the basis that Mystic improperly booked certain items.  As we find that the scope of the First Informational Filing is limited to the 2022 CapEx Projects, we find that ENECOS's

---

[31] Schedule 3A, § 1.B.2.ii (Update to components of the Annual Fixed Revenue Requirement).

[32] Schedule 3A, § 1 provides that "[t]he projections of the [AFRR] . . . will be updated prior to the Term and are subject to true-up under the methodology outlined in Section III."  *See also* Mystic Response at 7 (including a chart from Exhibit No. MYS-0023 that shows that a one-time update of projected costs "for entire Term" will be performed as part of the Second Informational Filing).

[33] Schedule 3A, § 1.B.2.ii.

[34] Schedule 3A, § 1.A ("The Annual Fixed Revenue Requirement, the Maximum Monthly Fixed Cost Payment, and the Fixed O & M/Return on Investment component of the Monthly Fuel Cost Charge set forth in Schedule 3 of the Agreement shall be updated prior to the Term and subject to true-up as detailed herein and in accordance with the Methodology for all items with the exception of ROE and depreciation that are fixed and must be modified by a Federal Power Act section 205 filing.");  *see also Constellation Mystic Power, LLC*, 165 FERC ¶ 61,267 at P 174 ("We clarify that the true-up mechanism applies to all items with the exception of items that are fixed or must be modified by filing an FPA section 205 filing (i.e., ROE)").

challenges to Mystic's accounting for historical capital expenditures are outside the scope of this filing.  Therefore, we deny Mystic's request to rule on the merits of ENECOS's challenge of turbine inspections and the Campus Segregation Project.  We note that, as stated above, the informal challenge process for Mystic's Second Informational Filing begins on April 1, 2022, and the formal challenge process begins on September 15, 2022.[35]  This will allow parties the opportunity to review Mystic's accounting of certain costs.  We reiterate that all costs except return on equity and depreciation are subject to the true-up—not just projected capital expenditures—and that Mystic must support all inputs to the formula rate template at the time of the Second Informational Filing, as Mystic states it intends to do.[36]

25.     We disagree with Mystic that historical expenses can only be challenged after the discovery of new evidence.[37]  The Commission has held that acceptance of a formula rate constitutes acceptance of the formula, but not the inputs to the formula.  Parties can challenge the inputs to the formula rate in the same way as they can challenge costs in a stated rate case,[38] including but not limited to the prudence of those expenditures.[39]  The Commission has explained that in order for formula rates to work properly, they must allow for after-the-fact corrections and updates.[40]  While all parties should use due

---

[35] Schedule 3A, § 1.B.2.ii.

[36] Schedule 3A, § 1.A.

[37] Mystic Response at 33-34 ("The Commission should . . . verify that new attacks on historical (pre-2018) capital expenditures, which were already the subject of a lengthy hearing, will not be permitted absent discovery of new evidence of error (i.e., evidence not known or knowable at the time of the hearing).").

[38] The costs recovered through the formula rate are not part of the rate itself and have not been reviewed.  These costs therefore may be challenged.  *Appalachian Power Co.*, 23 FERC ¶ 61,032, at 61,088 (1983) (establishing that the Commission is not precluded from examining the reasonableness of fuel costs automatically collected under a formula rate).  If the costs are shown to be unjust and unreasonable, the Commission may require retroactive relief.  *Golden Spread Elec. Coop., Inc. v. Sw. Pub. Serv. Co.*, 72 FERC ¶ 61,142, at 61,727 & n.9 (1995); *Pub. Serv. Co. of N.H.*, 6 FERC ¶ 61,299, at 61,710 (1979) (addressing challenged fuel adjustment costs and requiring refunds of the extra costs of spot coal).

[39] *Black Hills Power, Inc*., 148 FERC ¶ 61,035, at P 3 (2014) (In reviewing inputs to formula rates, "safeguards need to be in place to ensure that . . . the costs to be recovered in the formula rate are reasonable and were prudently incurred").

[40] *Va. Elec. & Power Co.*, 123 FERC ¶ 61,098, at P 46 (2008).  *See also PPL Elec. Utils. Corp.*, 125 FERC ¶ 61,121, at P 36 (2008) ("under formula rates, parties have the

diligence to ensure that correct data is used, should an error be discovered, the inputs to the formula rate must be corrected and the formula rate re-calculated to prevent parties from being overcharged or undercharged.[41]  We note that other challenges regarding whether historical capital expenditures were properly accounted for will be subject to challenges during Mystic's Second Informational Filing.

### 3.  <u>Failure to Support Capital Expenditures</u>

26.    We find that Mystic has not adequately supported its 2022 CapEx Projects as being necessary to meet the obligations of the Mystic Agreement or being the least-cost commercially reasonable option consistent with Good Utility Practice.  NESCOE and ENECOS raise issues of material fact that cannot be resolved based on the record before us and that are more appropriately addressed in a trial-type, evidentiary hearing and settlement judge procedures.[42]  NESCOE and ENECOS dispute a number of specific items.  In response, Mystic provides some additional support in the form of two affidavits detailing the decision-making and capital approval process behind several specific projects (e.g., the Campus Segregation Project).  For other projects, Mystic notes that it is unable to provide more information than it has already provided due to the phase of the internal capital planning process in which the projects are currently being reviewed.  We cannot find on this record that Mystic has met its burden of demonstrating that its 2022 capital expenditures meet the standard required by the Mystic Agreement, namely that the capital expenditures are:  (1) necessary to meet Mystic's obligations under the Mystic Agreement; and (2) the least-cost commercially reasonable option consistent with Good Utility Practice.[43]  Therefore, we will set this issue for hearing and settlement judge procedures.  As part of the arguments raised by the parties, the hearing should consider

---

right to challenge the inputs to or the implementation of the formula at whatever time they discover errors in the inputs to or implementation of the formula.  Indeed, customers may not uncover errors in data or imprudent or otherwise inappropriate costs *until well after the challenge period*," footnotes omitted, emphasis added).

[41] *Va. Elec. & Power Co.*, 123 FERC ¶ 61,098, at P 46.

[42] *See, e.g.*, *Delmarva Power & Light Co.*, 145 FERC ¶ 61,055 at P 60 (2013) ("We cannot find on this record that DP&L has supported the propriety of the inclusion of certain costs in DP&L's formula rate.  Rather, we find that the Formal Challenges raise issues of material fact that cannot be resolved based on the record before us, and are more appropriately addressed in a trial-type, evidentiary hearing and settlement judge procedures.").

[43] Mystic Agreement, Schedule 3A, § II.2.A.

whether the support Mystic has provided for its 2022 CapEx Projects satisfies these two standards.

27.    While we are setting these matters for a trial-type evidentiary hearing, we encourage the parties to make every effort to settle their disputes before hearing procedures are commenced.  To aid the parties in their settlement efforts, we will hold the hearing in abeyance and direct that a settlement judge be appointed, pursuant to Rule 603 of the Commission's Rules of Practice and Procedure.[44]  If the parties desire, they may, by mutual agreement, request a specific judge as the settlement judge in the proceeding; otherwise, the Chief Judge will select a judge for this purpose.  The Chief Judge, however, may not be able to designate the requested settlement judge based on workload requirements which determine judges' availability.[45]  The settlement judge shall report to the Chief Judge and the Commission within 60 days of the date of this order concerning the status of settlement discussions.  Based on this report, the Chief Judge shall provide the parties with additional time to continue their settlement discussions or provide for commencement of a hearing by assigning the case to a presiding judge.

The Commission orders:

    (A)    NESCOE's and ENECOS' formal challenges are hereby granted in part subject to hearing, and summarily denied in part, as discussed in the body of this order.

    (B)    Pursuant to the authority contained in and subject to the jurisdiction conferred on the Federal Energy Regulatory Commission by section 402(a) of the Department of Energy Organization Act and the FPA, particularly sections 205 and 206 thereof, and pursuant to the Commission's Rules of Practice and Procedure and the regulations under the FPA (18 C.F.R. Chapter I), a public hearing shall be held concerning whether Mystic has sufficiently supported its proposed 2022 CapEx Projects as required by Schedule 3A of the Mystic Agreement, as discussed in the body of this order.  However, the hearing will be held in abeyance to provide time for settlement judge procedures, as discussed in Ordering Paragraphs (C) and (D) below.

    (C)    Pursuant to Rule 603 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.603 (2021), the Chief Judge is hereby directed to appoint a settlement

---

[44] 18 C.F.R. § 385.603 (2021).

[45] If the parties decide to request a specific judge, they must make their joint request to the Chief Judge by telephone at (202) 502-8500 within five days of this order. The Commission's website contains a list of Commission judges available for settlement proceedings and a summary of their background and experience (http://www.ferc.gov/legal/adr/avail-judge.asp).

judge in this proceeding within 45 days of the date of this order. Such settlement judge shall have all powers and duties enumerated in Rule 603 and shall convene a settlement conference as soon as practicable after the Chief Judge designates the settlement judge. If parties decide to request a specific judge, they must make their request to the Chief Judge within five days of the date of this order.

(D)    Within 60 days of the appointment of the settlement judge, the settlement judge shall file a report with the Commission and the Chief Judge on the status of the settlement discussions. Based on this report, the Chief Judge shall provide participants with additional time to continue their settlement discussions, if appropriate, or assign this case to a presiding judge for a trial-type evidentiary hearing, if appropriate. If settlement discussions continue, the settlement judge shall file a report at least every 60 days thereafter, informing the Commission and the Chief Judge of participants' progress toward settlement.

(E)    If settlement judge procedures fail and a trial-type evidentiary hearing is to be held, a presiding judge, to be designated by the Chief Judge, shall, within 45 days of the date of the presiding judge's designation, convene a prehearing conference in these proceedings in a hearing room of the Commission, 888 First Street, NE, Washington, DC 20426, or remotely (by telephone or electronically), as appropriate. Such a conference shall be held for the purpose of establishing a procedural schedule. The presiding judge is authorized to establish procedural dates, and to rule on all motions (except motions to dismiss) as provided in the Commission's Rules of Practice and Procedure.

By the Commission.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

Document Content(s)

ER18-1639-000.docx...................................................1

# Exhibit 2

179 FERC ¶ 62,179
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Constellation Mystic Power, LLC                    Docket No. ER18-1639-017

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW

(June 27, 2022)

Rehearing has been timely requested of the Commission's order issued on April 28, 2022, in this proceeding. *Constellation Mystic Power*, *LLC*, 179 FERC ¶ 61,011 (2022).

In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713(f) (2021); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

Kimberly D. Bose,
Secretary.

Document Content(s)

ER18-1639-017.docx....................................................1